1 │ SHEPPARD MULLIN RICHTER & HAMPTON LLP
    A Limited Liability Partnership
2 │  Including Professional Corporations
   │ LISA M. MARTENS, Cal. Bar No. 195824
3 │ lmartens@sheppardmullin.com
   │ JESSE A. SALEN, Cal. Bar No. 292043
4 │ jsalen@sheppardmullin.com
   │ 12275 El Camino Real, Suite 100
5 │ San Diego, California 92130-4092
   │ Telephone:  858.720.8900
6 │ Facsimile:   858.509.3691

7 │ Attorneys for Different Rules, LLC
   │ dba Jack In The Box

8 │

9 │           **UNITED STATES DISTRICT COURT**

10 │         **SOUTHERN DISTRICT OF CALIFORNIA**

11 │

| Different Rules, LLC, *dba* Jack in the Box, a Delaware limited liability company, | Case No. **'21 CV 1871 BAS KSC** |
|---|---|
| Plaintiff, | COMPLAINT FOR: |
| v. | 1. COPYRIGHT INFRINGEMENT; |
| West Realm Shires Services, Inc. *fka* FTX US, a Delaware corporation; and DOES 1 through 10, inclusive | 2. TRADEMARK DILUTION UNDER FEDERAL AND CALIFORNIA LAW; |
| Defendant. | 3. TRADEMARK INFRINGEMENT; |
|  | 4. FALSE DESIGNATION OF ORIGIN; AND |
|  | 5. UNFAIR COMPETITION. |
|  | **DEMAND FOR JURY TRIAL** |

Plaintiff Different Rules, LLC *dba* Jack In The Box ("JITB" or "Plaintiff"), by and through its counsel, hereby alleges as follows for its Complaint against defendant West Realm Shires Services, Inc. *fka* FTX US ("FTX" or "Defendant"), and DOES 1 through 10, inclusive, and each of them. This is a complaint for copyright infringement (17 U.S.C. § 501 et seq.), trademark dilution under the Lanham Act (15 U.S.C. § 1125) and California law (Cal. Bus. & Prof. Code § 14247), trademark infringement under the Lanham Act (15 U.S.C. §§ 1114 and 1125), false designation of origin under the Lanham Act (15 U.S.C. § 1125), and unfair competition under the Lanham Act (15 U.S.C. § 1125) and California law (Cal. Bus. & Prof. Code § 17200 et. seq.).

## INTRODUCTION

### A. JITB's Background

1.     Founded in 1951, JITB is one the nation's largest fast-food chains with over 2,200 restaurants in the United States. Over the years, JITB invested hundreds of millions of dollars to develop its famous "Jack Character"—often referred to by JITB and the public as "Jack" and/or "Jack Box"—which is protected by multiple U.S. copyright registrations.  In addition, JITB's related "Jack Logo," which incorporates an image of Jack's head, is protected by multiple federally registered trademarks and copyrights.

2.     JITB created Jack around 70 years ago and evolved the character over time. In 1951, JITB released the original version of Jack, a clown-like spherical head that sat atop of drive-thru boxes to ease customers into the then-novel concept of drive-thru restaurants. JITB was the first drive-thru fast food restaurant in the United States.

3.     In 1970, JITB recreated the character into "Jack the Clown", a cartoon-like "man" depicted as a clown with a spherical white head, green hair, a loose white shirt, and a large rainbow collar.

Complaint

4.     Around 1995, JITB reimagined Jack into the current version of the character, "Jack Box", as a humorous, no-nonsense businessman famously voiced by Dick Sitting. He is the modern incarnation of the company's longtime mascot Jack and is well-known by the public as the human "Jack". He appears like a typical adult human male, with the exception of his large spherical white head, blue dot eyes, nose, and curvy smile.

5.     Jack has appeared in over 300 television and radio commercials, often shown in various real-life situations. Jack's facial expressions and clothing attire also change throughout JITB's advertisements.

6.     Over the years, Jack has also made many public appearances at sporting events. For instance, in 2011, Jack attended a Laker's game, at which the public readily recognized him as "Jack from Jack in the Box."

7.     JITB has acquired common law trademark rights in Jack and his modern characteristics, namely his large spherical white head, nose, and curvy smile attached to a human talking body. JITB used this trademark first, by advertising Jack nationwide since 1995.

**B. FTX's Background**

8.     FTX is a cryptocurrency exchange co-founded by its 29-year-old CEO, Sam Bankman-Fried ("Bankman-Fried").

9.     On information and belief, Bankman-Fried has become the wealthiest person in the field of cryptocurrency as a result of launching his highly speculative and opportunistic cryptocurrency venture, FTX, in 2019, and immensely benefitting from a boom in the industry.  He is reputed to have a net worth of $26.5 billion.

**C. FTX's Illegal Conduct**

10.     Rather than spending its vast financial resources to develop its own intellectual property, FTX brazenly and illegally copied or derived its "Moon Man" mascot from JITB's Jack. Like JITB's Jack, FTX's Moon Man appears in

multiple national television advertisements, including advertisements aired during the Major League Baseball playoffs.

11.   Just like Jack, FTX's Moon Man has a spherical white head also affixed to a talking human actor, with blue-dotted eyes, a nose, and a smile. The two characters are strikingly similar in both appearance and behavior.  For example, the Moon Man also changes his facial expressions and clothing attire throughout advertisements and appearances, just like Jack.

12.   Making matters worse, FTX's Moon Man is a far inferior version of Jack that is now tarnishing Jack's reputation to consumers, and/or blurring consumers' association of FTX's Moon Man with Jack.  Indeed, consumers have already expressly voiced confusion by wrongfully associating the Moon Man with Jack. As a result, FTX has damaged, and continues to damage the JITB brand icon. For example, following FTX's recent use of the Moon Man in advertisements aired during a nationally televised Major League Baseball game, a news reporter posted an article referring to the Moon Man as having a "Jack in the Box Head," and viewers of that baseball game shared their reactions on Twitter® as to who the "big head" might be, with one user posting a picture of Jack, stating that the Moon Man is the "Jack in the Box mascot." Other members of the public have made statements such as "Oh look, it's Walmart Jack in the Box!", "Is it a dirty jack in the box thing?", and "Jack in the Box's drugged up cousin", among others, which all demonstrate that viewers were associating the Moon Man with Jack. One Twitter® user even tweeted a public post directly to FTX stating, "Hey, @FTX_Official, your mascot doesn't look like the moon. He looks like Jack-In-The-Box with skin cancer."

13.   JITB's claims asserted herein arise out of, and are based on, FTX's unauthorized use of the "Moon Man" Character, as well as FTX's unauthorized copying or deriving, which is virtually identical to and confusingly similar with JITB's famed Jack.

14. FTX has used and is continuing to use the Moon Man Character in national advertising without JITB's authorization or consent.

15. On information and belief, FTX's use of the Moon Man Character is intended to exploit JITB's valuable intellectual property and trade on JITB's goodwill in its longstanding and well-recognized Jack. Such use is made in bad faith, has tarnished and/or blurred, and if not enjoined, will continued to tarnish and/or blur JITB's famous Jack brand.

16. FTX's continued use, and copying and/or deriving of the Moon Man constitutes, at least, copyright infringement (17 U.S.C. § 501 et seq.), trademark dilution (15 U.S.C. § 1125), trademark infringement (15 U.S.C. §§ 1114 and 1125), false designation of origin (15 U.S.C. § 1125), and unfair competition in violation of California law (Cal. Bus. & Prof. Code § 17200 et seq.). FTX's misconduct has resulted in economic damage and irreparable harm to JITB. If not enjoined, FTX's continued use of the infringing Moon Man Character will continue to cause JITB irreparable harm.

## THE PARTIES

17. Plaintiff JITB is a Delaware limited liability company with its headquarters and principal place of business at  9357 Spectrum Center Blvd, San Diego, CA 92120. JITB owns all of the copyrights and trademarks asserted in this Complaint, all of which were formerly owned by JITB's predecessor-in-interest, Jack in the Box Inc., but have now been duly assigned to Different Rules, LLC.

18. Upon information and belief, Defendant FTX is a Delaware corporation with its principal place of business at 2000 Center Street, Berkley, California 94704.

19. FTX is an Internet-based US-regulated cryptocurrency exchange that provides services throughout the United States.

20. The true names, identities and capacities, whether individual, associate, corporate or otherwise, of Defendants DOES 1 through 10, inclusive, and

each of them (the "DOE Defendants"), are unknown to JITB at this time, who therefore sues the DOE Defendants by such fictious names. When the true names and capacities or participation of the DOE Defendants are ascertained, JITB will amend this complaint to assert the true names, identities and capacities. JITB is informed and believes and thereon alleges that each of the DOE Defendants sued herein is responsible for the wrongful acts alleged herein, and is therefore liable to JITB in some manner for the events and happenings alleged in this complaint. JITB is informed and believes and thereon alleges that at all times herein mentioned, the DOE Defendants were and are at a minimum, committing a tort in or directed at this District.

### **JURISDICTION AND VENUE**

21.     This Court has original jurisdiction over JITB's federal claims pursuant to Section 39(a) of the Lanham Act, 15 U.S.C. § 1121(a), and Sections 1331 and 1338(a) of the Judicial Code, 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over Plaintiff's claims  arising under the laws of the State of California pursuant to 28 U.S.C. §§ 1338(b) and 1367.

22.     This Court has personal jurisdiction over FTX because it operates its principal place of business in Berkley, California and markets its services in this District, the Southern District of California, including but not limited to presenting its Moon Man Character and mascot at Major League Baseball games, which have been widely aired nationally and within this District. FTX either expected or reasonably should have expected that its activities would cause harm to JITB in this District.

23.     Venue is proper under 28 U.S.C. § 1391(b)(2) & (3) because FTX engages in business and promotes its services under its infringing Moon Man in this District, and thus, a substantial part of the events or omissions giving rise to these claims occurred in or are directed at this District, and JITB's reputation is being injured in this District.

Complaint

# FACTUAL ALLEGATIONS

## A. THE JACK LOGO AND THE JACK CHARACTER

24.     JITB has developed a significant portfolio of intellectual property, including its famous "Jack Logo," a caricature of a Jack in the Box mascot with a spherical head. For over 70 years, JITB has enjoyed uninterrupted trademark and copyright privileges, producing countless commercials and advertisements for the public, and even merchandise depicting Jack, such as antenna toppers. More than 30 million antenna toppers have been distributed to customers displaying the Jack Logo. JITB has spent hundreds of millions of dollars on building its Jack brand, which includes its extensive use of the Jack Character and Jack Logo in national advertising, on merchandise, and at points-of-sales.

25.     As a result of its decades of extensive advertising of its Jack Character, and its Jack Logo, as well as its considerable sales and press coverage, these properties have become famous identifiers of JITB's goods and services, and have become extremely famous and popular throughout the United States.

26.     Jack has appeared in over 300 television and radio commercials, shown in various real-life situations. Throughout JITB's many advertisements, Jack changes his facial expressions and clothing attire. Jack has also made public appearances at sporting events over the years. For instance, in 2011, Jack attended a Laker's game with his son, and the public readily recognized him as "Jack from Jack in the Box." He also pitched at a Dodger's baseball game.

27.     Jack has appeared on television, radio, and on merchandise ranging from antenna toppers to Pez dispensers, leading to a sale of more than 5 million items bearing the Jack Character design.

28.     JITB invests considerable resources to protect and enforce its intellectual property rights in the Jack Logo and Jack Character.  The Jack Logo and Jack Character are invaluable assets of JITB's business, and collectively have become its brand icon.

## B. JITB's REGISTERED COPYRIGHTS

29.    JITB owns numerous U.S. copyright registrations that cover the artistic expression of Jack, including without limitation, the registrations listed below:

| Registration Number | Registration Date | Title/Description |
|---|---|---|
| VA0001097612 | July 30, 2001 | 70's Jack: Plastic Toy |
| VA0001097613 | July 30, 2001 | Jack with Flag: Plastic Toy |
| V3443D350 | 1999 | Antennae Ball Topper & 9 other titles |
| VA0001097615 | July 30, 2001 | Hawaii Jack: Plastic Toy |
| VA0001242034 | March 23, 2004 | Jack in the Box "Jack" Full Body: Drawing |
| V9973D875 | July 16, 2019 | The Many Faces of Jack |
| V3508D097 | March 5, 2004 | The Many Faces of Jack / VA 906-624 (1997) |

30.    The above-listed registrations are each owned by JITB and encompass illustrations and caricatures, as well as dramatic, graphic, pictorial, and audiovisual works that embody different artistic expressions of Jack. JITB duly registered its original works of authorship fixed in a tangible form or medium and therefore has exclusive rights to Jack. Each registered copyright is an original depiction of Jack.

## C. JITB's REGISTERED TRADEMARKS

31.    JITB owns numerous trademarks distinctively linked to Jack, hereinafter collectively referred to as the "Jack Marks", including, without limitation, the registered trademarks listed below:

| Registration | Registration Date | Mark | Goods/Services |
|---|---|---|---|
| 6062667 | May 26, 2020 |  | International Class 9 for "Antenna ball." |
| 2305980 | January 4, 2000 |  | International Class 42 for "Restaurant services." |
| 2258516 | July 6, 1999 |  | International Class 42 for "Restaurant services." |
| 2979861 | July 26, 2005 |  | International Class 43 for "Restaurant services." |
| 2099851 | September 23, 1997 |  | International Class 9 for "Antenna ball decorations." |

Complaint

32.     JITB's registration certificates provide *prima facie* evidence that the registered marks are valid. JITB's registration nos. 2305980, 2258516, 297986, and 2099851 have been registered for more than five years and have become incontestable pursuant to 15 U.S.C. § 1065.

33.     JITB also considers the humanized Jack character, as portrayed in its extensive advertising, to be a common law service mark, one of the Jack Marks, and part of JITB's brand.

34.     JITB uses its Jack Marks in the sale or advertising of its fast-food and merchandise to consumers.

35.     Jack's large spherical white head is a unique, non-functional design and is protected by trademark law. JITB has long used its Jack Marks as a symbol to distinguish itself as the source of its goods and services.

36.     Through JITB's extensive advertising, the Jack Marks have individually and collectively become famous and well-known to consumers.

**D. THE MOON MAN**

37.     FTX is a cryptocurrency exchange co-founded by its 29-year-old CEO, Sam Bankman-Fried ("Bankman-Fried"). On information and belief, Bankman-Fried is the richest person in crypto, said to be worth $26.5 billion on paper, as a result of launching FTX in 2019. Indeed, Bankman-Fried has spawned great fortunes at historic speed as a result of his "get rich quick" speculative business.

38.     FTX advertises its services using its Moon Man character which is virtually identical to JITB's Jack.

39.     FTX's Moon Man is a spherical white head also affixed to a talking human actor, with blue-dotted eyes, a nose, and a smile. A side-by-side comparison illustrates that the two characters are strikingly similar.

**Moon Man Character**                    **Jack Character**

 

 



40.     On information and belief, FTX knowingly copied or derived its Moon Man from the copyright protected Jack Character given JITB's longstanding use of these famous properties. FTX has used the Moon Man Character, at minimum, in commercials and at public appearances such as sporting events.

41.     On information and belief, FTX is an official sponsor of the Major League Baseball ("MLB").

42.     FTX is and has been using the Moon Man Character to advertise its cryptocurrency services nationally and through its advertising, including its sponsorship of the MLB.

43.     For example, FTX released an online advertisement in which the Moon Man is depicted in a substantially similar cartoon-like humorous fashion to the Jack Character and Jack Marks, in which the spherical head affixed to a human body talks and changes his facial expressions, as well as his clothing attire, as if he were human.

44.     Notably, Jack also changes his facial expressions and clothing attire in scenes of commercials and for appearances at events, such as baseball games.

45. On information and belief, FTX copied or derived its Moon Man from JITB's protected intellectual property.

46. The Moon Man is a poorer quality copy or derivation of the Jack Character and Jack Marks. As such, FTX's use of the Moon Man in advertising has tarnished Jack's reputation, and/or blurred consumers' association of Jack with FTX's shoddy Moon Man. It has also created actual confusion among JITB consumers and is likely to continue to confuse consumers.

47. For example, consumers have expressed on social media the following comments about FTX's Moon Man:

- "Is it a dirty jack in the box thing?"
- "Oh look, it's Walmart Jack in the Box!"
- "Jack in the Box's drugged up cousin."
- "This guy is not the moon, this is Jack in the Box gone off the percs."
- "Every time I see the 'moon guy' on these MLB broadcasts I think it's a copyright infringement on Jack In The Box, if they have their guy trademarked."

48. One Twitter® user even tweeted a public post directly to FTX stating, "Hey, @FTX_Official, your mascot doesn't look like the moon. He looks like Jack-In-The-Box with skin cancer."

49. On October 15, 2021, JITB sent a cease and desist letter to FTX, notifying FTX that it is infringing on JITB's intellectual property and diluting its trademarks. FTX responded on October 29, 2021, stating that it refuses to stop copying or deriving Jack and will continue advertising the Moon Man. FTX's response to JITB's cease and desist letter is also rife with legal and factual inaccuracies, such as "Jack in the Box has only narrow protection limited to the behatted ping pong-headed clown who exploded out of a box to sell burgers."

Complaint

50.     Defendant's continuing infringement of JITB's intellectual property is willful and in bad faith.  Defendant's conduct has caused, and if not enjoined, will continue to cause, JITB considerable economic damage and irreparable harm, including by devaluing the goodwill associated with Jack.

## FIRST CAUSE OF ACTION

## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)

51.     JITB incorporates by reference the facts and allegations set forth in paragraphs 1-50, as though fully set forth herein.

52.     At all times relevant hereto, JITB has earned all right, title, and interest in and to the photographic and audiovisual works reproduced, distributed and publicly displayed by Defendant through advertisements on television, sporting events, and various websites, including without limitation https://www.colormatics.com/case-study/ftx-moon/.

53.     JITB has already obtained registrations from the United States Copyright Office for the copyrights to the aforementioned works, including without limitation:  VA0001097612,  VA0001097613,  V3443D350,  VA0001097615, VA0001242034, V9973D875, V3508D097.

54.     Without authorization, FTX copied or derived its Moon Man character, as seen in numerous FTX advertisements, from JITB's copyright protected works, including those listed in the preceding paragraph.

55.     JITB did not authorize Defendant's copying, derivation, display, or distribution of its works.

56.     Even after JITB notified Defendant of its wrongful conduct through a cease and desist letter, Defendant expressly refused to stop infringing on JITB's copyright protected works.

57.     Defendant's conduct was willful within the meaning of the Copyright Act.

58.     Through its conduct described above, Defendant is liable to JITB for copyright infringement pursuant to 17 U.S.C. § 501.

59.     JITB has suffered, and if Defendant's conduct is not enjoined, will continue to suffer, substantial losses and irreparable harm, including but not limited to damage to its business reputation and goodwill.

60.     JITB is entitled to recover damages, which include its losses and all profits Defendant has made as a result of its wrongful conduct. 17 U.S.C. § 504.

61.     JITB is also entitled to statutory damages under 17 U.S.C. § 504(c).

62.     In addition, because Defendant's infringement was willful, the award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

63.     JITB is entitled to recover its attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

## SECOND CAUSE OF ACTION

## TRADEMARK DILUTION (15 U.S.C. § 1125(c))

64.     JITB incorporates by reference the facts and allegations set forth in paragraphs 1-63, as though fully set forth herein.

65.     The Jack Marks are distinctive in that they are widely recognized by the general consuming public as a designation of the source of JITB's goods and services. For example, JITB owns all rights, title, and interest in and to federal trademark registration numbers: 6062667, 2305980, 2258516, 2979861, and 2099851, in international classes 9, 42, and 43 for merchandise and restaurant services, and JITB has developed rights in its famous common law mark for the Jack character as portrayed in extensive advertising in connection with JITB's restaurant services.

66.     Through JITB's decades of extensive advertising using the Jack Logo and the Jack character, each of the Jack Marks have become famous.

- 14 -

67.     Defendant's unauthorized use of the Moon Man character in advertising began after the Jack Marks became famous.

68.     Upon information and belief, Defendant willfully intended to trade on the recognition of the Jack Marks through Defendant's advertising that incorporates the Moon Man character.

69.     Defendant's use of its Moon Man character in advertising is so similar to the Jack Marks that it has confused and/or is likely to confuse consumers as to the source of Defendant's services, and has diluted and/or will likely dilute JITB's Jack brand by blurring or tarnishment.

70.     Defendant's use of its Moon Man has and likely will continue to cause dilution by blurring consumers' association of JITB's Jack Marks with its Moon Man. The association arises from the similarity of the Jack Marks, mainly Jack's famous spherical white head attached to a human talking body that changes its attire throughout advertisements and appearances, with Defendant's Moon Man which is nearly identical to and, at a minimum, confusingly similar with each of the Jack Marks. Defendant's use of the Moon Man is likely to whittle away the distinctiveness of JITB's famous Jack Marks.

71.     Defendant's use of its Moon Man has and likely will continue to cause dilution by tarnishing or degrading positive associations of JITB's famous Jack Marks and thus, to harm the reputation of JITB's Jack Marks and JITB's business. Indeed, the public has already commented on the similarity of Defendant's Moon Man with JITB's Jack Marks, and the shoddy quality of Defendant's Moon Man, including statements such as the Moon Man is "Jack in the Box's drugged up cousin," among others. Defendant's Moon Man is likely to blur and/or tarnish JITB's famous Jack Marks by creating a negative association in the minds of consumers.

72.     Defendant's continued unauthorized use of the Moon Man has and is likely to continue to cause injury to JITB's business reputation and/or the dilution of the distinctive quality of JITB's famous Jack Marks.

73.     Defendant's use of its Moon Man character in advertising is so similar to the Jack Marks, that it diminishes, or is likely to diminish, the public's association of the Jack Marks exclusively with JITB.

74.     Defendant's continued unauthorized use of the Moon Man is likely to cause injury to JITB's business reputation and is likely to cause dilution by blurring and/or tarnishment, of the distinctive quality of JITB's famous Jack Marks.

75.     Through its actions, Defendant has caused, and if not enjoined will continue to cause, economic damage and irreparable and continuing harm to JITB. JITB has no adequate remedy at law because monetary damages alone are inadequate to compensate JITB for the injuries caused by Defendant.

76.     JITB is entitled to an injunction restraining Defendant, its officers, agents, and employees, and all persons acting in concert with Defendant, from engaging in further acts of dilution. Such harm will continue and increase until Defendant is preliminarily and permanently enjoined from its unlawful conduct.

### **THIRD CAUSE OF ACTION**

**TRADEMARK DILUTION (Cal. Bus. & Prof. Code § 14247, et seq.)**

77.     JITB incorporates by reference the facts and allegations set forth in paragraphs 1-76, as though fully set forth herein.

78.     The Jack Marks are distinctive and famous in that they have nationwide fame, and are widely recognized by the general consuming public of California including in this District, and as a designation of the source of JITB's goods and services.

79.     Defendant's unauthorized use of the Moon Man character in advertising began after the Jack Marks became famous in California.

80.     Defendant's acts have caused, and if not enjoined will continue to cause, irreparable and continuing harm to JITB's Jack Marks, business, reputation, and goodwill. JITB has no adequate remedy at law because monetary damages are inadequate to compensate Plaintiff for the injuries caused by Defendant.

## **FOURTH CAUSE OF ACTION**

### **TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**

81.    JITB incorporates by reference the facts and allegations set forth in paragraphs 1-80, as though fully set forth herein.

82.    JITB's federally registered Jack Marks and the goodwill of its business associated therewith are of great and significant value, and are highly distinctive of JITB Goods and Services.

83.    Defendant's unauthorized use of the Moon Man character in advertising is so similar to JITB's use of the federally registered Jack Marks that it has already caused actual confusion, and/or is likely to cause confusion and mistake and deceive potential customers and the general purchasing public as to the source, origin, or sponsorship of JITB's goods and services, and are likely to deceive the public into believing that the goods and services offered and sold by Defendant originate from, are associated with, or are otherwise authorized by JITB, all to the damage and detriment, of JITB's reputation, goodwill, and sales.

84.    Defendant's unauthorized use of the Moon Man character constitutes trademark infringement of the federally registered Jack Marks, the full extent of which is presently unknown but is substantial. This has caused damages to JITB and the substantial business and goodwill symbolized by the Jack Marks in violation of the Lanham Act, 15 U.S.C. § 1114.

85.    Defendant's actions described above, including the unauthorized use of the Jack Marks in interstate commerce, have caused, and unless restrained, will continue to cause great and irreparable injury to JITB, to the Jack Marks, and to the business and goodwill represented thereby, leaving JITB with no adequate remedy at law.

86.    Defendant has actual knowledge of the registered Jack Marks.

87.   JITB expressly notified Defendant of its infringing conduct described herein through a cease and desist letter sent to Defendant on October 15, 2021.

88.   On October 29, 2021, Defendant responded to JITB's cease and desist letter and expressly refused to comply with JITB's demands to cease and desist from using the Moon Man character in advertising.

89.   Defendant's acts constitute willful trademark infringement in violation of 15 U.S.C. § 1114.

90.   By reason of the foregoing, Defendant is liable to JITB for an amount representing three (3) times JITB's damages and/or Defendant's illicit profits and reasonable attorney's fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. § 1117.

**FIFTH CAUSE OF ACTION**

**TRADEMARK INFRINGEMENT (15 U.S.C. § 1125)**

91.   JITB incorporates by reference the facts and allegations set forth in paragraphs 1-90, as though fully set forth herein.

92.   JITB owns common law rights in the humanized Jack character dating back to at least 1995 and the Jack Marks that date back to 1951.

93.   The acts and conduct of Defendant as alleged in JITB's Third Cause of Action, immediately above, constitute trademark infringement under 15 U.S.C. § 1125.

94.   At all times relevant, Defendant exercised ownership or control over online and media advertising for its products, services and websites, and knowingly infringed on JITB's trademark rights in advertising for its products, services, and website.

95.   Defendant's unauthorized use of the Moon Man character in its advertising is so similar to JITB's use of the humanized Jack character that it has already caused actual confusion and/or is likely to cause consumer confusion or to

cause mistake or to deceive as to the origin of the products and services offered and sold by Defendant and as to their affiliation, connection, or association with and/or endorsement or approval by JITB.

96.     As a direct result of the actual and continuing likely confusion, mistake, or deception, JITB has suffered and will continue to suffer actual and irreparable damage.

## SIXTH CAUSE OF ACTION

### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

97.     JITB incorporates by reference the facts and allegations set forth in paragraphs 1-96, as though fully set forth herein.

98.     Defendant's unauthorized use of the Moon Man character for the offer and provision of goods and services has caused and will cause confusion of the relevant public and trade in view of the Jack Marks.

99.     Defendant's unauthorized use of the Moon Man character trades upon JITB's goodwill associated with the Jack Marks.

100.   Defendant's deceptive promotion and distribution of its services in connection with the Moon Man constitute a false designation of origin and false and misleading descriptions and representations of fact in violation of 15 U.S.C. § 1125(a).

101.   JITB has been and will continue to be damaged by the confusion, mistake, and deception caused by Defendant's use of Jack and the Jack Marks.

102.   Any defect, objection to or fault found with Defendant's goods and/or services sold or provided under JITB's Jack or Jack Marks would necessarily reflect on and seriously injure the reputation JITB has established for its marks and business.

103.   JITB does not and has never consented to or authorized Defendant's adoption or commercial use of Jack or the Jack Marks for its goods and/or services.

104.   Upon information and belief, at all times relevant to this action, including when Defendant first adopted the Moon Man character and commenced commercial use of the Moon Man character on or in connection with the aforementioned goods and services, Defendant knew of the prior adoption and widespread commercial use of the Jack Marks, and Defendant knew of the valuable goodwill and reputation acquired by JITB in connection with the Jack Marks. Defendant's illegal conduct is therefore willful.

105.   JITB is entitled to injunctive relief against Defendant and recovery of damages to JITB in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

### UNFAIR COMPETITION (Cal. Bus. & Prof. Code § 17200, *et seq.*)

106.   JITB incorporates by reference the facts and allegations set forth in paragraphs 1-105, as though fully set forth herein.

107.   By the conduct alleged above, Defendant has intentionally and willfully engaged in unlawful, unfair, and/or fraudulent methods of competition, and unfair or deceptive acts or practices in violation of California Business & Professions Code § 17200 and the common law.

108.   Defendant's actions, including, but not limited to, its unauthorized use of the infringing Moon Man Character in commerce in connection with the marketing and sale of its services constitutes an unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.

109.   Defendant's actions have and are likely to continue to cause confusion, misrepresentation, and/or to cause mistake or to deceive the public as to the affiliation, approval, sponsorship or connection between JITB and Defendant, and constitute unfair competition at common law and under California Business & Professions Code § 17200.

110.   Upon information and belief, unless restrained by this Court, Defendant will continue to infringe JITB's protected copyright materials, and trade

unfairly in connection therewith, such that money damages will not afford JITB adequate relief for the injury to JITB's goodwill sustained by such actions.

111.   Upon information and belief, Defendant has the purpose or intent to injure JITB, or to tarnish its reputation.

112.   Defendant's actions have resulted in direct and proximate damage to JITB.

113.   Defendant has been unjustly enriched as a direct result of its wrongful acts, and JITB is entitled to restitution, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, JITB prays for a judgement:

A.   Finding Defendant liable for infringing one or more of JITB's copyright registrations;

B.   Finding Defendant liable for diluting JITB's trademarks under 15 U.S.C. § 1125;

C.   Finding Defendant liable for diluting JITB's trademarks under Cal. Bus. & Prof. Code § 14247;

D.   Finding Defendant liable for infringing JITB's registered trademarks under 15 U.S.C. § 1114;

E.   Finding Defendant liable for infringing JITB's common law trademark under 15 U.S.C. § 1125;

F.   Finding Defendant liable for falsely designating the origin of its services under 15 U.S.C. § 1125;

G.   Finding Defendant liable for unfairly competing with JITB;

H.   Enjoining Defendant from use of the Moon Man Character and an injunctive order requiring Defendant to destroy all Moon Man content;

I.   Ordering Defendant to provide an accounting of its profits for all infringements of JITB copyrights;

J.      Awarding JITB its actual damages and all profits Defendant has made as a result of Defendant's wrongful conduct per 17 U.S.C. § 504;

K.      Awarding JITB statutory damages pursuant to 17 U.S.C. § 504;

L.      Increasing the award to JITB of damages for willful copyright infringement pursuant to 17 U.S.C. § 504(c)(2);

M.      Awarding JITB its actual damages and costs, and all profits Defendant has made as a result of Defendant's wrongful conduct per 15 U.S.C. § 1117;

N.      Increasing the award to JITB of damages in an amount not to exceed three times its actual damages because of the circumstances so justify pursuant to 15 U.S.C. § 1117;

O.      Finding this case to be exceptional pursuant to 15 U.S.C. § 1117 and requiring Defendant to pay JITB's reasonable attorneys' fees;

P.      Awarding JITB its costs and attorneys' fees pursuant to applicable law;

Q.      Awarding JITB punitive or exemplary damages where appropriate;

R.      Awarding JITB restitution for Defendant's unjust enrichment;

S.      Awarding JITB pre and post-judgment interest as applicable; and

T.      Ordering any other relief the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial of all the issues which are triable to a jury.

Dated:  November 3, 2021

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By    _____
                    */s/ Jesse A. Salen*
              Lisa M. Martens (Cal. Bar No. 195824)
              Jesse A. Salen (Cal. Bar No. 292043)

         Attorneys for Different Rules, LLC dba Jack
                         In The Box

Complaint